# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZUBAIR R. TAALIBUDDEEN, | : | CIVIL NO: 1:22-CV-01354 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| NEWBERRY TOWNSHIP, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I. Introduction.

The plaintiff, Zubair R. Taalibuddeen ("Taalibuddeen"), claims that the defendants violated his Fourth and Fourteenth Amendment rights as well as Pennsylvania law in connection with his arrest at a local Walmart. The defendants filed motions to dismiss Taalibuddeen's amended complaint. For the reasons stated below, we will grant in part and deny in part those motions to dismiss.

### II. Background.

Taalibuddeen commenced this action pro se by filing a complaint on August 31, 2022. *Doc. 1.* He also filed an application to proceed *in forma pauperis*, which we granted. *Docs. 2, 5.* After screening Taalibuddeen's complaint, we concluded that it failed to state a claim upon which relief can be granted. *Doc. 6* at 1. But we

granted Taalibuddeen leave to amend his complaint. *Id.*  And on May 3, 2023, he

filed an amended complaint naming Newberry Township, Officer Douglas S.

Klinefelter ("Officer Klinefelter"), and Walmart, Inc. ("Walmart") as defendants.

*Doc. 7* at ¶ 1.

In his amended complaint, Taalibuddeen alleges that on September 1, 2020,

he shopped for a futon and a small area rug at Walmart in Goldsboro,

Pennsylvania. *Id.* ¶ 9.  He "obtained both items from their designated areas, placed

both items on to his cart and continued to the self-check register, all while noticing

he was being watched by the manager Michelle Reder from loss prevention." *Id.*

¶ 10.  While scanning at the self-checkout, Taalibuddeen noticed four barcodes on

the futon box. *Id.* ¶ 11.  Assuming all the barcodes were the same, he scanned one,

purchased his items, and proceeded toward the exit. *Id*. ¶¶ 11, 12.

As Taalibuddeen made his way toward the exit, a Walmart employee asked

to see his receipt. *Id.* ¶ 12.  Taalibuddeen queried why he was being asked for a

receipt when other customers were not. *Id*. ¶ 13.  The Walmart employee said that

it was because Taalibuddeen's "cart was bigger[.]" *Id.*   Taalibuddeen, who is

African American, protested that "he was being racially profiled." *Id.* ¶¶ 4, 13.

Reder came to address the situation, and she asked Taalibuddeen to walk

with her to the register. *Id.* ¶ 14.  After scanning each barcode on the futon box,

Reder accused Taalibuddeen of placing the barcodes on the box. *Id.* ¶¶ 14, 15.

Taalibuddeen denied this. *Id.* ¶15.  And he asked Reder if she had seen him put the barcodes on the box. *Id.*  Reder responded in the negative. *Id.*  She added, however, that "I can guarantee if I check the cameras, I will see you committing this crime because I know your type." *Id.*  When Taalibuddeen asked what she meant, Reder said, "you know what I mean, you Niggers are always trying to get over." *Id.* ¶ 16.

Taalibuddeen then asked to speak to Reder's manager and for a refund. *Id.* Reder responded: "No you will not be getting any money back from my store, matter of fact come to the back with me to my office." *Id.*  Taalibuddeen refused, and he asked Reder to call the police. *Id.*

At some point thereafter, Officer Klinefelter of the Newberry Township Police Department arrived, and Taalibuddeen was accused of theft. *Id.* ¶ 17.[1] Officer Klinefelter escorted Taalibuddeen to Reder's office, where he searched Taalibuddeen, finding no weapons or contraband. *Id.* ¶ 18.  Officer Klinefelter informed Taalibuddeen that after the security camera footage was reviewed, he would release him if there was no incriminating evidence. *Id.*  Taalibuddeen, Reder, and Officer Klinefelter then reviewed security camera footage for approximately 35 minutes. *Id.* ¶ 19.  The security camera footage did not show any

---

[1] It is not clear here if Taalibuddeen is alleging that Office Klinefelter accused him of theft, or if Reder accused him of theft in front of Officer Klinefelter.

incriminating conduct by Taalibuddeen. *Id.* And Taalibuddeen requested to be released. *Id.*

Instead of releasing Taalibuddeen, however, Officer Klinefelter arrested him and charged him with "Retail theft (F3) and Receiving stolen property (M1)." *Id.* ¶ 20. Officer Klinefelter told Taalibuddeen that it was not his job to prove guilt or innocence; the court would decide that issue. *Id.* According to Taalibuddeen, Officer Klinefelter failed to properly investigate the incident, and he had no probable cause to arrest him. *Id.* ¶ 21. Taalibuddeen told Officer Klinefelter that "he had been racially profiled as he was being charged with no evidence." *Id.* ¶ 22. Officer Klinefelter responded that he believed Reder. *Id.*

Officer Klinefelter then handcuffed Taalibuddeen in a manner that broke the skin on Taalibuddeen's wrist, leaving him with permanent scars. *Id.* When Taalibuddeen told Officer Klinefelter that the handcuffs were too tight, Officer Klinefelter responded, "who cares" and took Taalibuddeen to the York County booking center. *Id.* Taalibuddeen spent more than six hours in a booking cell waiting to see a judge. *Id.* ¶ 23.

Taalibuddeen claims that at his preliminary hearing, Reder and Officer Klinefelter offered false testimony to the court. *Id.* ¶ 24. On March 30, 2022, the case against Taalibuddeen was dismissed. *Id.* ¶ 25. Taalibuddeen asserts that he never committed any criminal offense. *Id.* ¶ 26. According to Taalibuddeen, this

incident has caused him to suffer a loss of employment and physical and psychological harm. *Id.* ¶ 31.

Taalibuddeen claims that Walmart, Newberry Township, and Officer Klinefelter violated his rights. *Id.* ¶¶ 32–37.  His amended complaint contains six counts.  Counts I is a claim against Officer Klinefelter for unlawful arrest and seizure in violation of the Fourth and Fourteenth Amendments. *Id.* ¶ 32.  Count II is a claim against Officer Klinefelter for excessive force in violation of the Fourth and Fourteenth Amendments. *Id.* ¶ 33.  Count III is a claim against Officer Klinefelter for malicious prosecution in violation of the Fourth and Fourteenth Amendments. *Id.* ¶ 34.  Count IV is a claim against Officer Klinefelter for violation of equal protection under the Fourteenth Amendment. *Id.* ¶ 35.  Count V is a claim against Newberry Township for violation of federal constitutional rights. *Id.* ¶ 36.  Count VI[2] asserts state-law claims of assault, battery, false arrest, false imprisonment, defamation of character, and malicious prosecution against Officer Klinefelter and Walmart. *Id.* ¶ 37.  As relief, Taalibuddeen requests compensatory damages from all defendants and punitive damages from Officer Klinefelter. *Id.* at 8-9, ¶¶ A, B.

---

[2] Taalibuddeen incorrectly titles this count as "Count IV."  There is already, however, a Count IV listed.  And because this count follows Count V, we assume Taalibuddeen meant this count to be Count VI.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *See doc. 24.* Newberry Township and Officer Klinefelter filed a partial motion to dismiss the amended complaint, and Walmart filed a motion to dismiss. *See docs. 20,* 21.[3] Those motions have been briefed. *See docs. 21, 22, 25, 26.* In the sections below, we consider the defendants' respective motions to dismiss.

## III.  Pleading and Fed. R. Civ. P. 12(b)(6) Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief

---

[3] Newberry Township and Officer Klinefelter move to dismiss Counts I, III, IV, V, and the state law claims for defamation, false arrest, false imprisonment, assault, and battery in Count VI. *See Doc. 20* at 1. Thus, they are not moving to dismiss Count II, which is the excessive force claim against Officer Klinefelter, or the state law malicious prosecution claim against Officer Klinefelter in Count VI. Moreover, although the motion purports to be moving to dismiss the state law assault and battery claims in Count VI against Officer Klinefelter, the brief in support of the motion does not mention the assault and battery claims. An argument that is not developed is forfeited. *See New Jersey Dep't of Env't Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 493 n.2 (3d Cir. 2020) ("As this argument was vaguely presented without factual or legal support, it is forfeited for lack of development."). Thus, Officer Klinefelter has waived any arguments for why the state law assault and battery claims against him should be dismissed.

under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

7

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

In sum, "[w]e accept as true all factual matters [the plaintiff] alleges, but his

complaint cannot survive unless the facts it recites are enough to state plausible

grounds for relief." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (citing

*Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "[a]

claim that relies just on 'conclusory statements,' or on 'threadbare recitals of the

elements of a cause of action' without supporting factual allegations, does not

establish plausible grounds for relief." *Beasley*, 14 F.4th at 231 (quoting *Fischbein*

*v. Olson Rsch. Grp., Inc.*, 959 F.3d 559, 561 (3d Cir. 2020)).

A complaint filed by a pro se litigant is to be liberally construed and

"'however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v.*

*Gamble,* 429 U.S. 97, 106 (1976)). "Notwithstanding the rule of liberal

construction, a pro se complaint may not survive dismissal if its factual allegations

do not meet Iqbal's basic plausibility standard." *Beasley*, 14 F.4th at 231.

## IV.  Newberry Township and Officer Klinefelter's Motion.

Taalibuddeen asserts federal claims against Newberry Township and Officer Klinefelter.  He also asserts state law claims against Officer Klinefelter.  As noted above, Newberry Township and Officer Klinefelter's motion to dismiss is a partial motion to dismiss.  We proceed first to address the federal claims that are the subject of that partial motion, and then we turn to the state law claims that are the subject of the motion.

### A. Federal Claims.

Taalibuddeen's federal claims against Officer Klinefelter and Newberry Township are claims under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state-law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.*  To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state-law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

10

We begin with the federal claim against Newberry Township and then turn to the federal claims against Officer Klinefelter.

### 1. Newberry Township—Count V.

In Count V of his amended complaint, Taalibuddeen brings a federal constitutional claim against Newberry Township.  Taalibuddeen alleges that "Newberry Township has failed to properly train, supervise, and/or discipline its officers, with regard to proper police practices including the exercise of arrest powers, the use of force, and the initiation of criminal proceedings, thus causing the constitutional violations in this case." *Doc. 7* ¶ 30.  And he claims that Newberry Township violated his rights in that it "encouraged, tolerated, ratified and has been deliberately indifferent to the following policies, patterns, practices and customs and the need for more or different training, supervision, investigation or discipline" in the following areas:

> a.  Legal cause to stop, detain, and arrest a citizen;
>
> b.  The use of force by police officer;
>
> c.  The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct.

*Id.* ¶ 36.

A municipality, such as Newberry Township, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of

*respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).  "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).  One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id.*  Another way for a plaintiff to present a claim against a municipality is to allege that his injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id.* (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipality under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or

authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). "Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss." *Estate of Roman*, 914 F.3d at 798. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Taalibuddeen has not alleged facts from which it can reasonably be inferred that a policy or custom of Newberry Township violated his rights. In fact, Taalibuddeen alleges nothing in this regard. Taalibuddeen merely asserts legal conclusions against Newberry Township, and he does not allege facts showing that a policy or practice of Newberry Township violated his rights. Accordingly, the amended complaint fails to state a claim against Newberry Township under the policy-or-custom strand of municipal liability.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798). "The latter avenue arose in the failure-to-train context, but applies to other failures and inadequacies by

13

municipalities, including those related to supervision and discipline of its . . . officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798.  Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.  In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at *5 (M.D. Pa. Mar. 31, 2022).  "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Thomas v.*

14

*Cumberland Cty.*, 749 F.3d 217, 226 (3d Cir. 2014) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989)).

Here, Taalibuddeen has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by Newberry Township caused a violation of his rights.  Again, Taalibuddeen alleges only legal conclusions against Newberry Township.  Accordingly, the amended complaint fails to state a claim against Newberry Township under the failure-to-train, supervise, or discipline strand of municipal liability.

In sum, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against Newberry Township.  Thus, we will dismiss Count V of the amended complaint.

### 2.  Officer Klinefelter—Counts I and III.

Officer Klinefelter contends that he is entitled to qualified immunity from Taalibuddeen's Fourth Amendment claims of unlawful arrest and seizure (Count I) and malicious prosecution (Count III).  Based on the allegations in the amended complaint, however, we cannot say at this early stage of the proceedings that Officer Klinefelter is entitled to qualified immunity.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil

damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity ensures that before officers are subjected to suit, they have notice that their conduct is unlawful. *Id.*  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow,* 457 U.S. at 818–19.

The qualified immunity analysis has two prongs. *Pearson,* 555 U.S. at 232. One prong of the analysis is whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right. *Id.*  The other prong of the analysis is whether the right was clearly established. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

Here, we start with the first prong, and analyze whether Taalibuddeen has alleged a violation of his Fourth Amendment right to be free from false arrest, false imprisonment, and malicious prosecution.  The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons … against

16

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause….” U.S. CONST. Amend. IV.  “To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause.” *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  And ‘“where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.’” *Harvard v. Cesnalis*, 973 F.3d 190, 202 (3d Cir. 2020) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).  Thus, ‘“[t]o state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful.’” *Id*. (quoting *James*, 700 F.3d at 682–83).  And to state a malicious prosecution claim, a plaintiff must “show that: ‘(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.’” *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)).  In support of his contention that he is entitled to qualified immunity, Officer

Klinefelter contends that he had probable cause to arrest and prosecute Taalibuddeen.

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). In other words, "'[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'" *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 263 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016)).

Officer Klinefelter contends that he had probable cause to arrest and prosecute Taalibuddeen based on information that he received from Reder. He argues that at the time of Taalibuddeen's arrest, the law "was uniform that when 'an officer has received his information from some person . . . who it seems reasonable to believe is telling the truth, he has probable cause.'" *Doc. 22* at 11 (quoting *Craig v. Collins*, No. CIV.A. 13-1873, 2013 WL 5271521, at *6 (E.D. Pa. Sept. 17, 2013)). We do not disagree with that statement of the law. But Officer

Klinefelter's argument that he had probable cause based on information that he received from Reder is not based on a fair reading of the facts alleged in the amended complaint.[4]

Taalibuddeen alleges that he did not commit any criminal offense and that Officer Klinefelter did not have probable cause to arrest him. *Doc. 7* ¶¶ 26, 21.  He further alleges that after Reder accused him of placing the barcodes on the box, he denied doing so. *Id.* ¶¶ 14, 15.  And he asked Reder if she had seen him put the barcodes on the box, and she allegedly responded in the negative. *Id.*  According to Taalibuddeen, she added, however, that "I can guarantee if I check the cameras, I will see you committing this crime because I know your type." *Id.*  When Taalibuddeen asked what she meant, Reder allegedly said, "you know what I mean, you Niggers are always trying to get over." *Id.* ¶ 16.  And Taalibuddeen, Reder, and Officer Klinefelter then reviewed security camera footage for approximately 35 minutes, but, according to Taalibuddeen, that footage did not show any incriminating conduct. *Id.* ¶ 19.  Construing the facts alleged in the amended complaint in the light favorable to Taalibuddeen, as we must when

---

[4] To the extent that Officer Klinefelter has alleged or mischaracterized facts that do not appear in the amended complaint, we do not accept them. *See doc. 22* at 9-15. ("[S]he immediately approached him after he purchased the items in question and . . . they were *run with the wrong bar codes*) (emphasis added) ("Ms. Reder is named as a Defendant . . . .") ("Ms. Reder *claimed to have witnessed* the alleged criminal activity . . . .") (emphasis added).

deciding a motion to dismiss, we cannot say that Officer Klinefelter had probable cause.

We thus turn to the second prong of the qualified immunity analysis—whether the law was clearly established.  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  In other words, "[t]he rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust 'consensus of cases of persuasive authority.'" *Id.* (internal citations omitted).  "It is not enough that the rule is suggested by then-existing precedent." *Id.*  Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* Still, "the facts of the existing precedent need not perfectly match the circumstances of the dispute in which the question arises." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 570 (3d Cir. 2017)  "A public official does not get the benefit of 'one liability-free violation' simply because the circumstance of his case is not identical to that of a prior case." *Peroza-Benitez v. Smith*, 994 F.3d 157, 166 (3d Cir. 2021) (quoting *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004)).  But if the law did not put the officer on notice that his conduct would be clearly unlawful, qualified immunity is appropriate. *Bayer v. Monroe County Children & Youth Services*, 577 F.3d 186, 193 (3d Cir. 2009).  "In other

20

words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011)).  "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *al-Kidd*, 563 U.S. at 743).

"While the plaintiff must sufficiently plead a violation, the burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019).  "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *Id*.

Although "qualified immunity should be resolved at the earliest possible stage of litigation, *see Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991), at the motion to dismiss stage, 'qualified immunity will be found only when the immunity is established on the face of the complaint.'" *O'Donnell v. Cumberland Cty.*, 195 F. Supp. 3d 724, 734–35 (M.D. Pa. 2016) (quoting *Schor v. North Braddock Borough*, 801 F. Supp. 2d 369, 378–79 (W.D. Pa. 2011) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006)).

"Thus, only where a plaintiff 'fails to state a claim of a violation of a clearly established law, [is] a defendant pleading qualified immunity . . . entitled to dismissal before the commencement of discovery.'" *Id.* (quoting *Schor*, 801 F. Supp. 2d at 379).

As set forth above, based on the facts alleged, we cannot say that Officer Klinefelter had probable cause to arrest and prosecute Taalibuddeen. And it was clearly established at the time of Taalibuddeen's arrest that "the right to be free from arrest except on probable cause, was clearly established[.]" *Andrews v. Scuilli*, 853 F.3d 690, 705 (3d Cir. 2017) (quoting *Orsatti*, 71 F.3d at 483). "Similarly, the right to be free from prosecutions on criminal charges that lack probable cause was also known and clearly established" at the time Officer Klinefelter charged Taalibuddeen. *Id*. Thus, based on the facts alleged in the amended complaint, Officer Klinefelter had fair warning that his arrest and prosecution of Taalibuddeen violated Taalibuddeen's Fourth Amendment rights. *See Brown v. Gap Inc.*, No. 1:22-CV-00165, 2022 WL 17669715, at \*10 (M.D. Pa. Dec. 14, 2022) (concluding "that the Officer Defendants had fair warning that by seizing/arresting/detaining Plaintiffs based on an accusation of retail theft that was not only unsubstantiated but also refuted by the very evidence (video surveillance) upon which the accusation was based, they violated Plaintiffs' constitutional rights"). Accordingly, it is not clear from the face of the amended complaint that

Officer Klinefelter is entitled to qualified immunity.  Therefore, Officer Klinefelter has not shown that Counts I and III of the amended complaint should be dismissed.

### 3.  Officer Klinefelter—Count IV.

In Count IV, Taalibuddeen claims that Officer Klinefelter violated his right to equal protection of the laws under the Fourteenth Amendment.  He alleges that he is African American and that he was racially profiled.  Officer Klinefelter asserts that Taalibuddeen's equal protection claim fails as a matter of law.

The Equal Protection Clause directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) To state an equal protection claim "in the profiling context," a plaintiff must show that the defendant's actions "(1) had a discriminatory effect and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002).  To show discriminatory effect, the plaintiff must "show that she is a member of a protected class and that she was treated differently from similarly situated individuals in an unprotected class." *Id*.  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992)).  "[A] plaintiff need not 'identify in a complaint actual instances where others have been treated differently.'"

23

*McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 647 (M.D. Pa. 2014)

(quoting *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 244 (3d Cir. 2008)).  Rather,

"[g]eneral allegations that a plaintiff was treated differently from others similarly

situated are sufficient." *Shkedi v. City of Scranton*, No. 3:CV-14-2069, 2015 WL

1505660, at *10 (M.D. Pa. Apr. 1, 2015).  The determination of whether

individuals are similarly situated is a "'case-by-case fact-intensive inquiry.'"

*McLaughlin*, 64 F. Supp. 3d at 648 (quoting *Suber v. Guinta*, 902 F.Supp.2d 591,

607 (E.D. Pa. 2012)).  "For that reason, some courts in this Circuit have stated that

a final determination of this issue is inappropriate at the motion-to-dismiss stage."

*Id.* (quoting *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa.

2013)).

    Officer Klinefelter argues that Taalibuddeen's equal protection claim fails

because he had probable cause to arrest and prosecute Taalibuddeen.  But, as

explained above, based on the facts alleged in the amended complaint,

Taalibuddeen has plausibly alleged that Officer Klinefelter did not have probable

cause.[5]

---

    [5] Moreover, even if Officer Klinefelter had probable cause to arrest and
prosecute Taalibuddeen that would not necessarily preclude an equal protection
claim. *Cf. Bradley*, 299 F.3d at 205 ("The fact that there was no Fourth
Amendment violation does not mean that one was not discriminatorily selected for
a search.").

Officer Klinefelter also argues that Taalibuddeen has not pleaded facts to show that he treated Taalibuddeen differently than similarly situated individuals, and he argues that although Taalibuddeen pleads facts that may arguably support an equal protection claim against others, he has not pleaded facts supporting an inference that he purposefully discriminated against Taalibuddeen.  Although a close call, we conclude that Taalibuddeen has alleged enough to state an equal protection claim against Officer Klinefelter.

Taalibuddeen alleges that he was racially profiled.  But "'[b]are assertions' that the defendant acted with discriminatory purpose will not suffice." *Xi v. Haugen*, 68 F.4th 824, 840–41 (3d Cir. 2023) (quoting *Iqbal*, 556 U.S.at 681). Rather, [t]he plaintiff must set forth 'sufficient factual matter' to show that the defendant acted 'because of,' not merely 'in spite of' a protected characteristic." *Id*. (quoting *Iqbal*, 556 U.S. at 677).

Here, in addition to alleging that he was racially profiled, Taalibuddeen alleges that Reder admitted that she did not see him place the barcodes on the box, but she made racially discriminatory comments suggesting that he did so. *Doc. 7* ¶¶ 15, 16.  Officer Klinefelter informed Taalibuddeen that he would release him if after watching the security camera footage, there was no incriminating evidence. *Id.* ¶ 18.  Taalibuddeen, Reder, and Officer Klinefelter then reviewed security camera footage for approximately 35 minutes. *Id.* ¶ 19.  The security camera

footage did not show any incriminating conduct by Taalibuddeen, but Officer Klinefelter nevertheless arrested and charged him. *Id.* ¶¶ 19–22.  These allegations coupled with the allegations that Taalibuddeen is African American and that he was racially profiled, and in the absence of any allegations suggesting that there was an alternate explanation for Officer Klinefelter's actions, are sufficient to state an equal protection claim against Officer Klinefelter. *See Watson v. Witmer*, 183 F. Supp. 3d 607, 613 (M.D. Pa. 2016) ( concluding that the plaintiff stated an equal protection claim where he alleged that, "as an African American, [he] is a member of a protected class," that the defendant "improperly arrested and detained [him] due to his race," that "race was a motivating factor in the decision to maliciously prosecute him with false charges," and that he could not reasonably have been confused with perpetrator of the robbery at issue); *Brown*, 2022 WL 17669715, at *7  (concluding that the "Plaintiffs—who are African American and therefore belong to a protected class—have sufficiently alleged an equal protection claim based on the allegations that they were wrongfully targeted, seized, detained, and arrested due not to objective proof of criminal activities but to the Officer Defendants' discriminatory biases").

### B. State Law Claims Against Officer Klinefelter—Count VI.

Officer Klinefelter moves to dismiss Taalibuddeen's state-law claims for false arrest, false imprisonment, and defamation.  We address each claim in turn.

### 1.  False Arrest and False Imprisonment.

In the Commonwealth of Pennsylvania, a claim for false arrest is synonymous with a claim for false imprisonment. *Gagliardi v. Lynn*, 285 A.2d 109, 111 (Pa. 1971).  To prevail on either, a plaintiff must demonstrate: (1) they were detained; and (2) the unlawfulness of their detention. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  An arrest based upon probable cause would be justified, regardless of whether the plaintiff was later found guilty. *Id.*

Officer Klinefelter asserts that he had probable cause to arrest Taalibuddeen. *Doc. 22* at 15.  But as discussed above, Taalibuddeen has plausibly alleged that Officer Klinefelter did not have probable cause to arrest him   Thus, we will not dismiss Taalibuddeen's state-law claims for false arrest and false imprisonment against Officer Klinefelter.

### 2.  Defamation.

Officer Klinefelter also moves to dismiss Taalibuddeen's claim for defamation.  A plaintiff asserting a defamation claim under Pennsylvania law, must

show the following elements: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. Ann. § 8343(a).  "A statement is defamatory if 'it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001)).  "But the statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Id*. (quoting *Tucker v. Phila. Daily News,* 848 A.2d 113, 124 (Pa. 2004)).

Taalibuddeen has failed to plead sufficient facts to state a defamation claim upon which relief can be granted against Officer Klinefelter.  In fact, Taalibuddeen has failed to allege what the communication by Officer Klinefelter at issue is, much less the defamatory nature of it, or its publication.  Thus, we will dismiss Taalibuddeen's defamation claim against Officer Klinefelter.

## V. Walmart's Motion.

Taalibuddeen brings state law claims of assault, battery, false arrest, false imprisonment, defamation of character, and malicious prosecution against Walmart.   We address each of these claims in turn.

### A.  Assault and Battery.

First, we will consider Walmart's motion to dismiss Taalibuddeen's claims for assault and battery.  Under Pennsylvania law, "[t]he tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension." *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009).  "Battery requires proof that the defendant acted with the intent to cause harmful or offensive bodily contact with the person of the plaintiff and that such contact actually followed." *Id.*

Taalibuddeen does not allege sufficient facts to state a claim of assault or battery upon which relief can be granted against Walmart.  Taalibuddeen alleges that, after accusing him of theft, Reder, as the agent of Walmart, requested him come to a back office with her. *Doc. 7* at ¶ 15, 16.  After Taalibuddeen refused, Reder called the police at Taalibuddeen's insistence. *Id.* ¶ 16.  Taalibuddeen does not allege that Reder touched him, attempted to touch him, or threatened to touch

29

him.  Nor does Taalibuddeen allege that he was ever in apprehension of imminent harmful or offensive bodily conduct by Reder.  Further, although Taalibuddeen alleges that Officer Klinefelter arrested him, he does not allege, and there is no basis to reasonably assume, that Reder actually participated in the arrest.  Thus, the amended complaint fails to state a claim of assault or battery against Walmart upon which relief can be granted.

### B.  False Arrest and False Imprisonment.

Next, we consider Walmart's motion to dismiss Taalibuddeen's claims of false arrest and false imprisonment.  As set forth above, under Pennsylvania law, to prevail on either a false arrest or a false imprisonment claim, a plaintiff must demonstrate: (1) he/she was detained; and (2) the unlawfulness of his/her detention. *Renk*, 641 A.2d at 293.

Walmart contends that it did not detain Taalibuddeen as he voluntarily assisted with the investigation, and he wasn't detained until Officer Klinefelter arrived.  That is an uncharitable reading of the amended complaint.  Moreover, Walmart has not addressed the caselaw that holds that a private party may be liable for false arrest or false imprisonment if they indirectly cause the arrest or imprisonment by making a false report. *See e.g., Braswell v. Wollard*, 243 A.3d 973, 980 (Pa. Super. Ct. 2020).  Considering the facts alleged, at this early stage of

the proceeding, we cannot say that Walmart is not responsible for detaining

Taalibuddeen.

Walmart also argues that it was entitled to detain Taalibuddeen under the

following provision of Pennsylvania's Retail Theft Act:

> A peace officer, merchant or merchant's employee or an agent
> under contract with a merchant, who has probable cause to
> believe that retail theft has occurred or is occurring on or about
> a store or other retail mercantile establishment and who has
> probable cause to believe that a specific person has committed
> or is committing the retail theft may detain the suspect in a
> reasonable manner for a reasonable time on or off the premises
> for all or any of the following purposes: to require the suspect
> to identify himself, to verify such identification, to determine
> whether such suspect has in his possession unpurchased
> merchandise taken from the mercantile establishment and, if so,
> to recover such merchandise, to inform a peace officer, or to
> institute criminal proceedings against the suspect.  Such
> detention shall not impose civil or criminal liability upon the
> peace officer, merchant, employee, or agent so detaining.

18 Pa. Stat. and Cons. Stat. Ann. § 3929(d).  Walmart suggests that Reder had

probable cause to believe that Taalibuddeen had switched the barcodes.  But

Walmart does not acknowledge that Taalibuddeen alleges that Reder admitted that

she did not see him do so, and her basis for thinking that he did was because of his

race.  Based on the allegations in the amended complaint, we cannot conclude that

Walmart is entitled to dismissal of the false arrest and false imprisonment claim.

### C.  Defamation.

Next, we consider Walmart's motion to dismiss Taalibuddeen's defamation claim.  We have already set forth the standards for defamation in Pennsylvania.  In his amended complaint, Taalibuddeen does not set forth what statement made by Walmart was allegedly defamatory.  In his brief, however, he points to Reder's racial statement. *See doc. 25* at 4.  Recall, Reder allegedly stated to Taalibuddeen "you know what I mean, you Niggers are always trying to get over." *Doc. 7* ¶ 16.  But opinions and racial epithets are not actionable as defamatory. *See Tannous v. Cabrini Univ.*, No. CV 23-1115, 2023 WL 6465842, at *8 (E.D. Pa. Oct. 4, 2023).  Moreover, Taalibuddeen does not allege that Reder made this statement to anyone other than Taalibuddeen.  Thus, he has failed to allege that the statement was published. *See Elia v. Erie Ins. Exch.*, 634 A.2d 657, 660 (Pa. Super. Ct. 1993) (stating that "in order for defamation to occur in the form of either libel or slander, the defamatory statement must be published or communicated to a third person").  In his brief, Taalibuddeen also asserts that his face was plastered on crime watch. *See doc. 25* at 4.  In addition to this not being alleged in his amended complaint, there are no allegations from which it could plausibly be inferred that Walmart was responsible for such.[6]

---

[6] We also note that under Pennsylvania law, statements made to law enforcement accusing someone of a crime are privileged:

In sum, we will dismiss Taalibuddeen's claim for defamation against
Walmart.

### D.  Malicious Prosecution.

Last, we consider Walmart's motion to dismiss Taalibuddeen's claim for
malicious prosecution.  Under Pennsylvania law, a plaintiff asserting a malicious
prosecution claim must show "(1) the defendants initiated a criminal proceeding;
(2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was
initiated without probable cause; and (4) the defendants acted maliciously or for a
purpose other than bringing the plaintiff to justice." *Merkle v. Upper Dublin Sch.
Dist.*, 211 F.3d 782, 791 (3d. Cir. 2000).  Malice has been defined as "ill will in the

---

Under Pennsylvania law, statements by "'judges, attorneys,
witnesses and parties in the course of or pertinent to any stage
of judicial proceedings are absolutely privileged.'" *Dempsey v.
Bucknell University*, No. 11-cv-1679, 2012 WL 1569826 at *14
(M.D. Pa. 2012) (quoting *Pawlowski v. Smorto*, 403 Pa. Super.
71, 588 A.2d 36, 41 (Pa. Super. Ct. 1991)).  This privilege also
extends to "statements made solely to law enforcement officials
in which an accusation of a crime . . . is made, and which are
made for the purpose of inducing those officials to bring
criminal charges against the accused...." *Pawlowski*, 588 A.2d
at 41–43.  This privilege is absolute, even if the "statements
may ultimately prove to be false or malicious motivated." *Id.*

*Ewideh v. Kohl's Dep't Stores Carlisle Pennsylvania*, No. 1:20-CV-2342, 2022
WL 2181235, at *6 (M.D. Pa. Feb. 4, 2022), *report and recommendation adopted*,
2022 WL 1618530, at *1 (M.D. Pa. May 23, 2022).

sense of spite, lack of belief, by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d. Cir. 1993). "Malice may be inferred from the absence of probable cause." *Id.* "Probable cause is proof of facts and circumstances that would convince a reasonable, honest person that the suspected person is guilty of a criminal offense." *Id.*

In some circumstances, a private defendant may be liable for malicious prosecution under Pennsylvania law. But "private individuals can only be liable for initiating criminal proceedings under limited circumstances, because officers generally exercise their own discretion in bringing cases against criminal defendants." *Tice v. PSP Trooper Tyler Prisk*, No. 4:23-CV-00823, 2023 WL 7004427, at *3 (M.D. Pa. Oct. 24, 2023). "Usually, the malicious prosecution action then lies against the officer for choosing to initiate a proceeding rather than the private citizen." *Id.* "But 'it is not necessary that one who procures the institution of criminal proceedings actually file the charges and prepare the complaint.'" *Id.* (quoting *Hess v. Lancaster Cnty.*, 514 A.2d 681, 684 (Pa. Commw. Ct. 1986)). Rather, a private defendant initiates criminal proceedings "where either (1) the private person's desire to have the proceeding initiated was the 'determining factor in the commencement of the prosecution,' for example, through urging officers to prosecute the case; or (2) the public official acted upon

34

the person's false information in carrying out the arrest." *Id*.  "In either

circumstance, the actions of the private person preclude the officer from exercising

his own discretion in deciding to carry out the prosecution." *Id*.

Here, Walmart contends that the malicious prosecution claim against it

should be dismissed because although Reder initiated the investigation into retail

theft, the police "in their sole discretion acted upon information relayed to them

and observed in surveillance videos, and arrested the Plaintiff at the store." *Doc. 21*

at 10–11.  But given the allegations in the amended complaint, we cannot say that

Officer Klinefelter acted in his sole discretion.  Taalibuddeen alleges that Reder

admitted that she did not see Taalibuddeen place the barcodes on the box; she

thought, however, that based on his race, the video surveillance footage would

show Taalibuddeen doing so; but the video surveillance footage did not show

Taalibuddeen doing so. *Doc. 7* ¶¶ 15, 16, 19.  Taalibuddeen also alleges that

Officer Klinefelter failed to properly investigate the incident, had no probable

cause to arrest him, and when Taalibuddeen told him that "he had been racially

profiled as he was being charged with no evidence," Officer Klinefelter responded

that he believed Reder. *Id*. ¶¶ 21, 22.  Given these allegations, we cannot say at this

early stage of the proceedings that Officer Klinefelter exercised his own discretion

in charging Taalibuddeen.  Thus, Walmart is not entitled to dismissal of the

malicious prosecution claim on that basis.

Walmart also alleges that there was probable cause for the charges.  But given the allegations set forth above, and as explained before, Taalibuddeen sufficiently alleges that there was not probable cause.  And although Walmart also suggests that Taalibuddeen has not pleaded that Reder acted with malice, given the alleged lack of probable cause, malice may be inferred here.  Thus, we will not dismiss Taalibuddeen's claim for malicious prosecution against Walmart.

## VI.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  Here, granting Taalibuddeen leave to amend would be futile as we have already granted him this opportunity after screening his complaint.

## VII.  Conclusion.

Based on the foregoing, we will grant in part and deny in part the partial motion to dismiss filed by Newberry Township and Officer Klinefelter.  More specifically, we will grant that motion to the extent that we dismiss the *Monell* claim against Newberry Township (Count V) and the defamation claim in Count

VI against Officer Klinefelter.  We will deny the motion in all other respects.  The remaining claims against Officer Klinefelter thus are:

- the Fourth Amendment unlawful arrest and seizure claim (Count I);

- the Fourth Amendment excessive force claim (Count II);

- the Fourth Amendment malicious prosecution claim (Count III):

- the Fourteenth Amendment equal protection claim (Count IV); and

- the state law assault, battery, false arrest, false imprisonment, and malicious prosecution claims in Count VI.

Based on the foregoing, we will also grant in part and deny in part the motion to dismiss filed by Walmart.  More specifically, we will grant that motion to the extent that we dismiss the assault, battery, and defamation claims in Count VI against Walmart.  We will deny the motion in all other respects.  The remaining claims against Walmart thus are the state law false arrest, false imprisonment, and malicious prosecution claims in Count VI.

An appropriate **ORDER** follows.

_S/Susan E. Schwab_
Susan E. Schwab
United States Magistrate Judge