**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZUBAIR TAALIBUDDEEN,** | : | **Civil No. 1:22-cv-1354** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **WALMART, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### I. <u>Factual Background</u>

This case, which comes before us for consideration of three motions *in limine* which seek to address anticipated evidentiary issues at trial, involves the September 1, 2020, arrest of the plaintiff, Zubair Taalibuddeen, for retail theft. The undisputed facts show that price tags on two items Taalibuddeen scanned at a Walmart store in Etters, PA belonged to items with lower prices than the items he stated that he intended to purchase. This curious switch of price tags formed the basis for this retail theft charge.

How it came to pass that Taalibuddeen was charged with retail theft lies at the heart of this lawsuit and involves a searching inquiry into the credibility of the

plaintiff and Walmart staff. From the defendant's perspective, viewing the evidence before them on September 1, 2020, Walmart security staff believed that there was probable cause to conclude that the switched price tags were part of an intentional effort by Taalibuddeen to fraudulently obtain these goods. Therefore, they contacted police and detained the plaintiff pending his arrest. In stark contrast, the plaintiff alleges he had nothing to do with the switched tags and that the Walmart loss prevention officer who called the police targeted him out of racial animus as demonstrated by her calling him a racial slur.

With this litigation defined by this stark factual dispute which turns on the credibility of these competing narratives, this case is proceeding to trial. In preparation for trial, the parties have filed three motions *in limine* which seek evidentiary rulings on various matters. First, Taalibuddeen has filed a motion which, in general terms, seeks to forbid any references by the defense to his prior criminal history. (Doc. 80). This motion was somewhat enigmatic in that it did not identify in any fashion what prior criminal history references Taalibuddeen sought to curtail at trial, however, Walmart's response to the motion provides us with useful context. As Walmart explains:

> Plaintiff did not identify any specific prior arrest, charges, convictions, or misconduct he seeks to exclude evidence of at trial. Upon review of Plaintiff's extensive criminal history, there is a relevant and probative

> charge for retail theft, 18 Pa.C.S.A. § 3929(A)(1), in the Court of Common Pleas of York County which Plaintiff pled guilty to on February 15, 2019. See a copy of the CP-67-CR-0002197-2017 criminal docket attached hereto . . . . As examined infra, evidence regarding this conviction for retail theft is admissible for impeachment purposes.

(Doc. 86 at 1). Walmart further avers that: "The facts underlying Plaintiff's cause of action arise from his being charged with retail theft at the subject Walmart store." (Id. at 3). Thus, Taalibuddeen's motion *in limine* calls upon us to consider whether, and to what extent, a conviction for retail theft, a crime of dishonesty, may be used to impeach the plaintiff in a case where his credibility is key to his claims.

Walmart, in turn, has filed two motions *in limine* which seek to prevent Taalibuddeen from presenting evidence of lost wages as a result of this incident as well as precluding testimony that the plaintiff's handcuffing incident to this 2020 arrest resulted in severe ongoing neurological injuries that continue to this day. (Docs. 81, 83). In support of these motions, Walmart advances a twofold argument, first contending that Taalibuddeen should be precluded from presenting this evidence since it was never disclosed in discovery. In addition, Walmart asserts that, under Pennsylvania law, issues of causation like those related to Taalibuddeen's medical disability claims typically require expert proof and may not be presented solely through the lay testimony of an interested party like the plaintiff.

These motions are ripe for resolution.[1] With the parties' contrasting positions framed in this fashion, as discussed below, these motions *in limine* will be granted, in part, denied, in part, and deferred in part as follows: the plaintiff's motion to preclude impeachment by his retail theft conviction is denied; the defendant's motion to preclude the plaintiff from presenting evidence of his lost wages is granted but with judgment deferred with regard to any witness testimony the plaintiff should wish to present at trial; the defendant's motion to preclude the plaintiff's lay testimony of the causal connection between his medical complications and his handcuffing is granted.

## II. Discussion

### A. General Principles Guiding Motion in Limine Practice

The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial. See Luce v. United States, 469 U.S. 38, 41 n.4 (1984); In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds sub nom., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) (the court

[1] On this score we note that Walmart has responded to Taalibudeen's motion *in limine,* but it appears that the plaintiff has failed to respond to Walmart's motions despite being ordered to do so.

exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. United States v. Romano, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, courts should be careful before doing so.

Legally, there are several different bases for motions *in limine*. First, such motions may be filed when it is alleged that evidence is going to be offered is irrelevant and inadmissible under the Federal Rules of Evidence. In addition, some motions *in limine* acknowledge the potential relevance and admissibility of certain evidence, but seek the exclusion of the evidence because its prejudicial impact substantially outweighs any probative value the proof might have.

In considering motions *in limine*, which call upon the Court to engage in preliminary evidentiary rulings, we begin by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" Abrams v. Lightolier Inc. 50 F.3d 1204, 1213 (3d Cir.

1995) (citations omitted); see Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion). Yet, while these decisions regarding the exclusion of evidence rest in the sound discretion of the district court, and will not be disturbed absent an abuse of that discretion, the exercise of that discretion is guided by certain basic principles.

One of the key guiding principles is reflected in the philosophy which shapes the rules of evidence. The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. The inclusionary quality of the rules is embodied in three cardinal concepts. The first of these concepts is Rule 401's definition of relevant evidence. Rule 401 defines what is relevant in an expansive fashion, stating:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Adopting this view of relevance, it has been held that "[u]nder [Rule] 401, evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence.' [Therefore] '[i]t follows that evidence is irrelevant only when it has no tendency to prove the fact. Thus the rule, while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant.'" Frank v. County of Hudson, 924 F.Supp. 620, 626 (D.N.J. 1996) (citing Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir.1994)) (quotations omitted).

This quality of inclusion embraced by the Federal Rules of Evidence is further buttressed by Rule 402, which generally defines the admissibility of relevant evidence in sweeping terms, providing that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

Fed. R. Evid. 402. Thus, Rule 402 expressly provides that all "[r]elevant evidence will be admissible unless the rules of evidence provide to the contrary." United States v. Sriyuth, 98 F.3d 739, 745 (3d Cir.1996) (citations omitted).

In addition, beyond these threshold considerations of relevance and admissibility, Rule 403 of the Federal Rules of Evidence provides for the exclusion of some potentially irrelevant but highly prejudicial evidence, stating that:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion

> of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

By permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.

These evidentiary concepts which guide rulings *in limine* are cabined by two other principles. First, certain forms of proof, such as hearsay testimony, are not permitted due to their inherent unreliability and the inability of parties to effectively cross examine and challenge these hearsay statements. See Fed. R. Evid. 801*, et seq*. In addition, the rules of evidence recognize that for certain types of proof in scientific or specialized realms, lay witnesses may not be competent and expert testimony is needed. See Fed. R. Evid 701, *et seq*.

Beyond objections grounded in the rules of evidence, there is a second basis for rulings excluding testimony and proof at trial. Evidence may also be excluded if a litigant has failed to obey the rules governing discovery by failing to make a timely

disclosure of that evidence to the opposing party. Thus, "[i]f a party fails to provide information or identify a witness as required . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In this regard:

> In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000).

Finally, while we possess the discretion to make such pretrial evidentiary rulings, we are reminded that we should often exercise caution in this field. In this regard, we recognize that:

> Parties frequently invite courts to make pre-trial rulings on issues of prejudice, relevance and admissibility through motions *in limine.* The United States Court of Appeals for the Third Circuit has cautioned us, however, that "pretrial [rulings regarding evidentiary] exclusions should rarely be granted.... Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." In re Paoli R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir. 1990); see also Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994) (noting that the Third Circuit's "cautious approach to Rule

> 403 exclusions at the pretrial stage....”). Moreover, the Third Circuit has characterized Rule 403, the rule permitting exclusion of evidence, as a “trial-oriented rule” and has warned that “[p]recipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are ... unfair and improper.” In re Paoli R. Yard PCB Litig., 916 F.2d at 859.

Keiser v. Borough of Carlisle, No. 1:15-CV-450, 2017 WL 4053686, at *2 (M.D. Pa. Sept. 13, 2017).

Judged against these benchmarks we turn to a consideration of the parties’ competing motions *in limine*.

**B. Taalibudeen’s Motion to Preclude Impeachment by His Prior *Crimen Falsi* Conviction is Denied.**

At the outset, the plaintiff has sought, in a somewhat cryptic way, to exclude any reference to his criminal record at trial. While Taalibudeen did not describe that criminal history or provide us with an explanation of why we should exclude this evidence, Walmart has provided some clarity in its response to the motion, explaining that the plaintiff pled guilty to a charge for retail theft, 18 Pa.C.S.A. § 3929(A)(1), in the Court of Common Pleas of York County on February 15, 2019. It is Walmart’s position that this conviction may be used to impeach the plaintiff should he testify at trial.

We agree.

The question of the degree to which a prior conviction may be used to impeach

a witness is governed by Rule 609 of the Federal Rules of Evidence, which provides that:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> **(1)** for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
> **(A)** must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> **(B)** must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
>
> **(2)** *for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement.*

Fed. R. Evid. 609(a).

With respect to this rule, as one court has aptly observed, subject only to the requirement that the conviction be less than ten years old, there is:

> No doubt that "Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness." U.S. v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014). Additionally, "[i]f the prior conviction involves a dishonest act or false statement, then Rule 609 provides that the evidence is automatically admissible and may be used to impeach the [witness] regardless of whether it is determined that the probative value of the evidence outweighs the prejudicial effect." U.S. v. Slade, 2013 WL 5873576, *3 (E.D. Pa. Nov. 1, 2013) (citing Fed.R.Evid. 609(a)(2)). "*Crimen falsi* convictions are not subject to the general balancing test of Rule 403." Id. (citing United States v. Wong, 703 F.2d

65, 67 (3d Cir. 1983)).

United States v. Larry, 537 F. Supp. 3d 766, 769 (M.D. Pa. 2021).

The rationale for impeachment of witnesses by crimes of dishonesty is rooted in commonsense and can be simply stated. “Crimes of this nature are believed to have a high value of impeachment—the only proper purpose served by admitting past convictions—because they bear directly on a witness's propensity to testify truthfully.” United States v. Guerrier, 511 F. Supp. 3d 556, 562 (M.D. Pa. 2021).

In this case, Walmart contends that Taalibudeen may be impeached by his 2019 retail theft guilty plea conviction because the crime of retail theft is a *crimen falsi*, a crime of dishonesty. We agree. Indeed, a rising tide of case law recognizes that the element of dishonesty that is inherent in a retail theft conviction defines it as a dishonest act which constitutes proper impeachment at trial. See e.g., Hester v. Speedway, LLC, No. CV 20-2350, 2023 WL 1863166, at *2 (E.D. Pa. Feb. 9, 2023); Coldsmith v. Agency Ins. Co., 556 F. Supp. 3d 445, 453 (M.D. Pa. 2021); United States v. Santiago-Rivera, No. 3-CR-17-006, 2017 WL 4551039, at *6 (M.D. Pa. Oct. 12, 2017), aff'd, 848 F. App'x 504 (3d Cir. 2021); Jackson v. City of Pittsburgh, No. CIV.A 07-111, 2010 WL 2511380, at *3 (W.D. Pa. June 17, 2010).

Notably, at least one court has permitted impeachment by prior retail theft convictions in a civil rights lawsuit arising out of a law enforcement response to a

reported retail theft. In Warren v. Twp. of Derry, No. CIV.A. 1:04-CV-2798, 2007 WL 2120043, at *3 (M.D. Pa. July 20, 2007), the plaintiffs lodged excessive force and racial discrimination civil rights claims against police arising out of their arrest on retail theft charges. At trial, the plaintiffs sought to exclude impeachment by prior retail theft convictions. The trial court denied this request, noting that the "retail theft conviction fall squarely within the ambit of Rule 609." Id. at *2. The Court further reasoned that reliance upon this conviction for impeachment purposes in the context of civil rights claims arising out of a retail theft arrest would not be unduly prejudicial, holding instead that use of that "retail theft conviction for impeachment purposes will not be unfairly prejudicial; any prejudice may be minimized by counsel's examination of plaintiffs or by a limiting instruction from the court." Id. at *3.

We find this approach persuasive. Therefore, we will deny Taalibudeen's motion to preclude impeachment of the plaintiff by his prior retail theft guilty plea conviction. However, absent some further offer of proof by counsel, we will limit this impeachment to questioning concerning the fact of this conviction and would not permit detailed cross examination into the factual details of the prior retail theft. Further, upon request, we will provide the jury with an appropriate limiting instruction regarding the use they may make of this impeachment evidence.

### C. **Walmart's Motions *in Limine* Will Be Granted, in part, and Deferred in Part**.

As we have noted, Walmart has filed two motions *in limine* which seek to prevent Taalibuddeen from presenting evidence of lost wages as a result of this incident as well as precluding testimony that the plaintiff's handcuffing incident to this 2020 arrest resulted in severe ongoing neurological injuries that continue to this day. (Docs. 81, 83).

We had ordered Taalibudeen to respond to these motions by November 9, 2026, but he has neglected to respond to the motions. (Doc. 85). This oversight has potential substantive significance for the plaintiff since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well settled that "Local Rule 7.6 can be applied to grant a motion . . . 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.'" Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, at *1 (M.D. Pa. Aug. 26, 2010) (quoting Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)).

Aside from Taalibudeen's failure to respond to these motions, we find that Walmart is largely justified in seeking the preclusion of this evidence. First, for the most part, exclusion of this evidence is justified given the fact that—with the exception of a single witness statement—Taalibudeen did not disclose evidence of his financial losses or ongoing medical complications to the defense in the course of discovery as he was required to do.

When considering exclusion of evidence as a discovery sanction, we are admonished to examine four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation. Nicholas, 227 F.3d at 148. In this case a dispassionate assessment of these factors

justifies exclusion of this evidence at trial. First, Walmart is plainly prejudiced if Taalibudeen is allowed to rely upon previously withheld proof to substantially increase the scope of his damages on the eve of trial and long after discovery closed in this case.[2] Second, Walmart's ability to cure or mitigate this prejudice is severely curtailed since discovery is closed in this case. Third, allowing Taalibudeen to proceed with expansive damages claims which have not been subjected to the crucible of discovery would be highly disruptive at trial. Therefore, casting aside for a moment the question of Taalibudeen's alleged willfulness, these other three considerations call for exclusion of any non-disclosed evidence.

We acknowledge Walmart concedes that Taalibudeen produced one document related to his alleged economic damages: a statement from Terrell McCraw dated February 11, 2024. According to Walmart, in this statement, Mr. McCraw indicated he was the main manager for LG Services and indicated that he hired Taalibudeen sometime back in the summer of 2020 for an opportunity to make anywhere from $1,500 to $3,000 a week depending on the trucks that were emptied that week. As to this statement, we note that the statement itself would be hearsay unless Mr. McCraw was present at trial prepared to testify. Therefore, the written

[2] On this score we note that discovery closed more than two years ago, in July of 2024. (Doc. 43).

statement may not be introduced at trial. Should Mr. McCraw appear as a witness at trial we will defer any ruling on the scope or admissibility of his testimony pending consideration of any offer of proof from the plaintiff, or objections from the defense.

Finally, in these motions *in limine* Walmart challenges Taalibudeen's apparent attempt, solely through his own lay testimony, to draw a causal connection between current neurological issues he claims to be experiencing and his September 2020 handcuffing following the retail theft report by Walmart.

We agree that this evidence should be excluded. At the outset, we note that Walmart is not directly responsible for the severity of any September 2020 handcuffing since that handcuffing was done by local police who we have dismissed from this case. In any event, drawing medical causation between these events, which are separated by some six years, is a task which Taalibudeen as a layman is not competent to perform. As we have observed:

> Normally a plaintiff may establish his case of causation with any evidence, direct or circumstantial, which tends to show defendant's actions as the legal cause of his harm. Where, however, the ultimate determinations lie beyond the knowledge or expertise of the average layperson, expert testimony is permitted (and sometimes required) to aid the jury in its understanding of the factors involved and the teaching of the pertinent discipline with respect thereto. Reardon v. Meehan, 424 Pa. 460, 227 A.2d 667 (1967); Weisman v. Sauder Chevrolet Co., 402 Pa. 272, 167 A.2d 308 (1961); Densler v. Metropolitan Edison Co., 235 Pa.Super. 585, 345 A.2d 758 (1975). Although in certain situations involving physical injury, it is possible for a jury reasonably to infer

> causation from the circumstances of an accident or occurrence, See, e. g., Illingworth v. Pittsburgh Railways Co., 331 Pa. 369, 200 A. 89 (1938); Fenstermaker v. Bodamer, 195 Pa.Super. 436, 171 A.2d 641 (1961), it is generally acknowledged that the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson. See Lambert v. Soltis, 422 Pa. 304, 221 A.2d 173 (1966); Smith v. Yohe, 412 Pa. 94, 194 A.2d 167 (1963). For a plaintiff to make out his cause of action in such a case, therefore, the law requires that expert medical testimony be employed.

Lee v. Mariei, No. 3:18-CV-663, 2023 WL 6532556, at *6 (M.D. Pa. July 18, 2023), report and recommendation adopted, No. 3:18-CV-663, 2023 WL 6535335 (M.D. Pa. Aug. 17, 2023) (quoting Hamil v. Bashline, 481 Pa. 256, 266–67, 392 A.2d 1280, 1285 (1978)).

Here Taalibudeen would invite a jury to make a causal medical connection between incidents that are remote in time. He may not rely on his own lay interpretation of the evidence to draw this conclusion. Instead, competent, medical evidence would be essential to support this inference and since the plaintiff has produced no such evidence, we will not permit him to substitute his own lay opinion for any expert medical judgment.[3]

---

[3] Finally, we note that efforts by the plaintiff to address remote medical complications, or endeavor to prove losses of income may open the door to questioning concerning other aspects of his criminal history. For example, the plaintiff may be subject to questioning regarding whether he has experienced other episodes of handcuffing which may have contributed to his current physical

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: November 16, 2026

---

impairments. Similarly, prospective employers might be subject to questioning concerning whether other past legal entanglements by Taalibudeen limited his employment prospects. While we emphatically are not ruling upon whether such examination would be permitted, we deem it appropriate to alert the plaintiff, who is proceeding *pro se*, of the potential dangers inherent in pursuing these lines of inquiry.